HARLAN v. CARNEY.

FRAUDS, STATUTE OF—SALES—PART DELIVERY — EVIDENCE — QUESTION OF FACT.

> In an action for the purchase price of peppermint. oil, where plaintiff had stored in defendant's warehouse a certain quantity of said oil, contradictory testimony as to whether defendant, on a certain date, purchased from plaintiff all of his oil and accepted delivery of the oil in his warehouse on said contract, thus complying with the statute of frauds (3 Comp. Laws 1915, § 11835, subd. 3), *held*, to present a question of fact for the jury.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted June 8, 1922. (Docket No. 46.) Decided July 20, 1922. Rehearing denied November 2, 1922.

Assumpsit by Alvin Harlan against Malcolm S. Carney for goods sold and delivered. Judgment for plaintiff. Defendant brings error. Affirmed.

*Thomas J. Cavanaugh,* for appellant.

*Earl L. Burhans* and *David Anderson,* for appellee.

MOORE, J. This suit is brought to recover the price of about 140 pounds of peppermint oil which plaintiff claims he sold to the defendant for $5.40 a pound. At the conclusion of the evidence defendant moved for a directed verdict, *first,* because the requirements of the statute of frauds had not been met, and, *second,* because the action is brought for the price of goods, while the proofs show that if any cause of action exists it is for a breach of contract of sale. The motions were overruled and the case was submitted to the jury in a charge that covers more than 11 pages of the printed record. The plaintiff had verdict and judgment in the sum of $800.15. The case is brought here by writ of error. The assignments of error are discussed by counsel under three heads, but they all revolve around the question of whether there was evidence from which the jury could fairly say that what is known as the statute of frauds has been met.

The applicable provisions of the present statute of frauds is section 11835, 3 Comp. Laws 1915. The section is so accessible and so long that we content ourselves by referring to it, except as appears later, instead of quoting it. It is agreed that in the case before us there was no sufficient memorandum in writing to meet the statute, but it is claimed there was a delivery and acceptance of a part of the goods, and

that what was done brought the purchaser under the provisions of subdivision three of section 11835, which reads:

"There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."

The plaintiff's version of what was done is in part as follows:

"I raised peppermint there in the season of 1920. Mr. Carney is also engaged in raising mint. Mr. Carney is a buyer of mint oil. He operates a mint distillery. * * * He told me when we went there to distill that if I give him a chance to buy the oil he would throw off a nickel a pound on distilling. The distill bill was to be 25 cents a pound. * * * In 1920 I had some old and some new mint. We cut the old mint in August in 1920 and took it to Mr. Carney's distillery and it was there distilled and I took it away, took it home. * * * After I got through distilling the old mint I decided to keep it elsewhere than at my place. I considered my place wasn't safe at the price of oil and we were away from home and I didn't think it was safe to leave it there so I took it down to Carney's place and put it in his storehouse that he had built purpose for that. It is a brick building with only one window with bars up to the window and a steel door in front, located right back of his house. * * * The cans the oil was put into there in the storehouse were Mr. Carney's. Mr. Carney gave me my receipt for it. That paper is the receipt. * * *

"'Aug. 28—20.

"'Recd. Al. Harlan 722-16 seventy one and 2-16 pounds pep. oil.

"'M. S. CARNEY.'

"After this the new mint came on and I took that to Mr. Carney's distillery. I took the oil home until we got through distilling—at various times. One

piece would be ready to cut before others is and I kept it at home until I made up my mind to sell it.    I went down town on October 8th for the purpose of selling.    In the first place I inquired the price of oil. I went and saw Frank Lindsley, a buyer.    I learned the price was $5.40 per pound.    That was before I saw Mr. Carney.    I saw Mr. Carney that day.    I met him on the corner, called Wood's corners, main four corners in the town where Mr. Wood had a hardware.    My son was with me, Howard Harlan. I said to Mr. Carney, 'What is the price of oil today?' He said, 'I will tell you, I can give you $5.40.'    I says, 'All right, you have bought it.    You have bought my oil.'    He says, 'Well, now, I will tell you, Al, I am full over there and I can't take that oil in today,' and he said his drums was full and he said his tanks was full and I would have to keep it 30 days and that in 30 days I should bring in the balance of it. He says, 'And I will settle for the whole thing.'    So I did so.    He took out his note book and wrote down the amount.    He asked how much we had and I told him about how much there was, what I thought there was.    He asked how much of that I had at home and I told him and he asked, 'How much of the whole thing?' and I told him and he took out his book.    I told him there was about 140 pounds of oil, more or less.    Of course nobody knew.    I didn't know because it was not all weighed.

"He says, 'Come in occasionally and I will let you know if there is a drum empty and if there is I will take this in.'    He said not to say anything about it. When he told me about the raise he told me not to say anything about it to any one.    I waited a month lacking a day and loaded the oil up and brought it down again and I went to Mr. Carney and told him I had brought the balance of the oil down and would like to get my money.    He says, 'Well, I will tell you, now, them drums haven't come back yet and there is no place to put it yet.    I can't put it in there at all.'    He says, 'You hold it a little while and I will let you know and the price will be just the same.' He says, 'You need not worry about that, the price will be just the same.'    So I took the oil back home again.    I told him I needed the money and he said,

'I will tell you, Al, you better go to the bank and borrow a little.' I said, 'I don't like to do that now. I got the money coming and I don't like to do it.' He says, 'Well, I guess you will have to do it for a while anyway.' * * *

"The last talk I had with him regarding the oil was April 2d this year, when Harry Kingsnorth was present right across from the freight office in Decatur. He was holding a public sale there. That day I had loaded the oil in and brought it to Decatur and I left the oil in the car and went and hunted up Carney and he was down to this sale and I went down there. I told him 'I have brought the oil down and want my money.' I says 'I need it this spring and I waited long enough and I want my money.' 'Well, now,' he says, 'I will tell you, the people that I sold this oil to backed out on me and I will have to back out on you.' I said, 'Well, now, Mr. Carney, that ain't no way to do business, I sold you the oil in good faith and I considered when I sold it to you it was sold and I want my money for it.' 'Well,' he says, 'I can't do anything, for I can't get it out of my own and I can't buy yours.' And I said, 'Well, now here, we don't want to take this into court. I don't want to do anything like that,' and I handed him a letter from the prosecuting attorney and he said he didn't give a damn for that—he said they couldn't get nothing out of him anyway and he said that he would give me the market price for the oil that day and I wouldn't take it. The market price that day was around $2.10 a pound. I can't think of anything else that was said that day."

Mr. Harlan's testimony is corroborated by the testimony of his 20-year-old son who claimed he was present. The defendant disputed the testimony of the plaintiff in all its essential features. This of course would present a question of fact as to what actually did occur. If the testimony of the plaintiff is true as to the conversation of October 8th, then defendant's status was changed from that of warehouseman to that of purchaser, and the requirement of the stat-

ute as to part delivery was fully met. This conclusion makes it unnecessary to discuss the other assignments of error.

The judgment is affirmed, with costs to the appellee.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.